UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Ronald V.,[1]

        Plaintiff,

v.

Kilolo Kijakazi,
Acting Commissioner of Social Security Administration,

        Defendant.

Case No. 22-cv-2140 (TNL)

**ORDER**

---

    Plaintiff, Ronald V. (hereinafter "Plaintiff"), seeks judicial review of the decision of the Commissioner of Social Security ("Defendant") denying his application for disability benefits. The matter is before the undersigned United States Magistrate Judge for disposition pursuant to 28 U.S.C. § 636 and Local Rules 7.2(a)(1). This Court has jurisdiction over the claims under 42 U.S.C. § 405(g).

    Both parties submitted cross-motions for summary judgment, [Docket Nos. 16, 19], and the Court took the matter under advisement on the parties' written submissions. For the reasons discussed herein, Plaintiff's Motion for Summary Judgment, [Docket No. 16], is **GRANTED**, and Defendant's Motion for Summary Judgment, [Docket No. 19], is **DENIED**.

**I. Background**

    On December 27, 2019, Plaintiff filed a Title II application for a period of disability and disability benefits. (Tr. 13, 165–168).[2] In his application, Plaintiff alleged that his disability

---

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in Social Security opinions such as the present Order. Thus, when the Court refers to Plaintiff by his name only his first name and last initial are provided.

[2] Throughout this Order, the Court refers to the Administrative Record, [Docket No. 9], by the abbreviation "Tr." The Administrative Record is consecutively paginated across 74 exhibits spanning 1,533 pages. (See Administrative Record [Docket No. 9]). Where the Court cites to the Administrative Record, it refers to the page numbers found in the bottom-right corner of these exhibits.

began on October 27, 2019. (Tr. 13, 165–168). The Commissioner initially denied Plaintiff's claim on April 9, 2020, and again, upon reconsideration, on August 12, 2020. (Tr. 13, 68–70, 83–85). On August 17, 2020, Plaintiff filed a written request for a hearing before an Administrative Law Judge. (Tr. 13, 115–16).

Administrative Law Judge Brenda Rosten (hereinafter "ALJ") conducted a hearing on April 28, 2021, regarding Plaintiff's claim. (Tr. 13, 36–67). Plaintiff along with independent vocational expert Bruce Magnuson ("IVE Magnuson") testified at the hearing. (Tr. 13, 36–67). On July 15, 2021, the ALJ issued a decision denying Plaintiff's request for a period of disability and disability insurance benefits. (Tr. 13–29). The ALJ concluded that Plaintiff was not disabled within meaning of the Social Security Act. (Tr. 29).

Plaintiff thereafter sought review of the decision by the Appeals Council. (Tr. 1–7). Subsequently, on July 15, 2020, the Appeals Council denied Plaintiff's request for review. (Tr. 1). As a result, the ALJ's decision became the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 416.1481.

On August 31, 2022, Plaintiff filed this action. (Compl. [Docket No. 1]). Thereafter, both parties submitted cross-motions for summary judgment, [Docket Nos. 16, 19], and the Court took the matter under advisement on the written submissions.

**II. Standards of Review**

   **A. Administrative Law Judge's Five-Step Analysis**

If a claimant's initial application for disability benefits is denied, he may request reconsideration of the decision. 20 C.F.R. §§ 404.907–404.909. A claimant who is dissatisfied with the reconsidered decision may then obtain administrative review by an administrative law judge ("ALJ"). 42 U.S.C. § 405(b)(1); 20 C.F.R. § 404.929.

2

To determine the existence and extent of a claimant's disability, the ALJ must follow a five-step sequential analysis. This analysis requires the ALJ to make a series of factual findings about the claimant's impairments, residual functional capacity, age, education, and work experience. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992). The Eighth Circuit has described the five-step process as follows:

> The Commissioner of Social Security must evaluate: (1) whether the claimant is presently engaged in a substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations; (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.

Dixon v. Barnhart, 353 F.3d 602, 605 (8th Cir. 2003).

### B. Appeals Council Review

If the claimant is dissatisfied with the ALJ's decision, he may request review by the Appeals Council, although the Appeals Council need not grant that request for review. See 20 C.F.R. §§ 404.967–404.982. The decision of the Appeals Council (or, if the request for review is denied by the Appeals Council, then the decision of the ALJ) is final and binding upon the claimant, unless the matter is appealed to federal court within sixty days after notice of the Appeals Council's decision. See 42 U.S.C. § 405(g); 20 C.F.R. § 404.981.

In this case, the Appeals Council declined to review the ALJ's decision finding that Plaintiff was not disabled. (Tr. 1–7).

### C. Judicial Review

Judicial review of the administrative decision generally proceeds by considering the decision of the ALJ at each of the five steps. Judicial review of the Commissioner's decision to

3

deny disability benefits, however, is constrained to a determination of whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008); Tellez v. Barnhart, 403 F.3d 953, 956 (8th Cir. 2005); Buckner v. Apfel, 213 F.3d 1006, 1012 (8th Cir. 2000) ("We may reverse and remand findings of the Commissioner only when such findings are not supported by substantial evidence on the record as a whole."). "Substantial evidence is less than a preponderance, but [it] is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Buckner, 213 F.3d at 1012 (quoting Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)); see Coleman v. Astrue, 498 F.3d 767, 770 (8th Cir. 2007).

In reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact for that of the ALJ. Hilkemeyer v. Barnhart, 380 F.3d 441, 445 (8th Cir. 2004). The possibility that the Court could draw two inconsistent conclusions from the same record does not prevent a particular finding from being supported by substantial evidence. Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994). The Court should not reverse the Commissioner's finding merely because evidence may exist in the administrative record to support the opposite conclusion. Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).

After balancing the evidence, if it is possible to reach two inconsistent positions from the evidence and one of those positions represents the ALJ's decision, the Court must affirm the ALJ's decision. Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992). Thus, the Court will not reverse the ALJ's "denial of benefits so long as the ALJ's decision falls within the 'available zone of choice.'" Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008). The decision of the ALJ "is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." Id. "If, after reviewing the record, the

court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009) (quotation omitted).

The claimant bears the burden under the Social Security Act of proving that he is disabled. See 20 C.F.R. § 404.1512(a); Whitman v. Colvin, 762 F.3d 701, 705 (8th Cir. 2014). Once the claimant has demonstrated he cannot perform past relevant work due to a disability, the burden then shifts to the Commissioner to show that the claimant retains the residual functional capacity ("RFC") to engage in some other substantial, gainful activity. Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005).

### III. Decision Under Review

Before beginning the five-step disability evaluation process, the ALJ first determined that Plaintiff met the insured status requirement of the Social Security Act through June 30, 2021. (Tr. 15). This finding is not in dispute.

The ALJ then made the following determinations in the five-step disability evaluation process.

At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of October 27, 2019. (Tr. 16). This finding is not in dispute. The Court will refer to the time period between Plaintiff's alleged onset date and the date Plaintiff last met the insured status requirement of the Social Security Act as "the adjudicated period."

At step two, the ALJ concluded that Plaintiff had "the following severe impairments: dysthymic disorder; an anxiety disorder; and major depressive disorder, single episode, unspecified." (Tr. 16). Plaintiff does challenge the findings made by the ALJ at step two.

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 17). Specifically, the ALJ found that Plaintiff did not have any impairment or combination of impairments which met or medically equaled listings 12.04 or 12.06. (Tr. 17–19). Plaintiff does not directly challenge the ALJ's findings at step three.

At step four, the ALJ made the following RFC determination:

> [T]hrough the date last insured, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant could have had occasional exposure to work around hazards, such as unprotected heights and fast and dangerous moving machinery. Mentally, the claimant could understand, remember, and carry out simple, routine tasks and maintain concentration, persistence, and pace for 2-hour work segments throughout an 8-hour workday. He could respond appropriately to brief and superficial interactions with co-workers, but should have done no work interdependent or in tandem with co-workers.

(Tr. 19–20). Plaintiff challenges this RFC determination made by the ALJ.

In making this RFC determination, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms"; however, the ALJ also concluded that Plaintiff's "statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the ALJ's] decision." (Tr. 21). Plaintiff does not directly challenge this credibility finding by the ALJ.[3]

---

[3] "Social Security Ruling 16-3p eliminates the use of the term 'credibility' and clarifies that the Commissioner's review of subjective assertions of the severity of symptoms is not an examination of a claimant's character, but rather, is an examination for the level of consistency between subjective assertions and the balance of the record as a whole." Noerper v. Saul, 964 F.3d 738, 745 n.3 (8th Cir. 2020). SSR 16-3p applies to the present case, "but it largely changes terminology rather than the substantive analysis to be applied," and in discussing said determination, Courts have continued to use the "credibility" terminology. See Noerper v. Saul, 964 F.3d 738, 745 n.3 (8th Cir. 2020).

Based on her RFC determination and relying on the testimony from the independent vocational expert, IVE Magnuson, the ALJ found that Plaintiff was unable to perform his past relevant work. (Tr. 24). Plaintiff does not challenge this finding.

Finally, at step five, the ALJ concluded that "[t]hrough the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that claimant could have performed." (Tr. 25). Relying upon testimony from independent vocational expert Bruce Magnuson, ("IVE Magnuson"), the ALJ specifically found that among the occupations Plaintiff would be able to perform were "assembler, small products" of which there are 319,284 positions in the national economy; "night cleaner" of which there are 72,462 positions in the national economy; and "cleaner/maid" of which there are 249,588 positions in the national economy. (Tr. 25). Although Plaintiff does not directly challenge the ALJ's finding at step five, he implicitly challenges these findings in as much as they are based on the ALJ's RFC determination which Plaintiff does directly challenge.

The ALJ thus concluded that Plaintiff was not under a disability, as that term is defined by the Social Security Act, at any time during the adjudicated period. (Tr. 29).

## IV. Analysis

Plaintiff asserts three overarching arguments in his appeal of the ALJ's decision: (1) the ALJ erred in her assessment regarding the severity of Plaintiff's impairments; (2) the ALJ erred in her RFC determination by failing to account for all of Plaintiff's impairments; and (3) the ALJ erred in her evaluation of Grant Bauer's medical opinions. (See Plf.'s Mem. [Docket No. 17] at 1, 12–23). For her part, Defendant argues that each of Plaintiff's arguments is unavailing, and the ALJ's decision is supported by substantial evidence.

## A. Plaintiff's Severe Impairments

As observed above, Plaintiff argues that the ALJ erred in her assessment regarding the severity of Plaintiff's impairments in step two of the sequential analysis. Specifically, Plaintiff argues that the ALJ erred in finding that Plaintiff's "hydronephrosis, with secondary chronic kidney disease," was a non-severe impairment.

An impairment or combination of impairments is "severe" if it "significantly limit[s] your physical or mental ability to do basic work activates" as defined by statute. 20 C.F.R. § 404.1522(a). Additionally, to be considered "severe," the impairment must have lasted or be expected to last for a continuous period of twelve month. 20 C.F.R. § 404.1509; Lenocker v. Astrue, 378 F. App'x 709, 710 (9th Cir. 2010).

In determining the severity of Plaintiff's impairments, the ALJ has a duty to develop the record sufficiently to permit meaningful review on appeal. See Noerper v. Saul, 964 F.3d 738, 747 (8th Cir. 2020). This duty to develop the record "arises from the simple fact that the disability determination process is not an adversarial process," and thus, the duty to develop the record "exists alongside the claimant's burden to prove [his] case." Id. Moreover, the ALJ's duty exists even when a claimant has the benefit of having a representative at the administrative hearing. Id. The Eighth Circuit Court of Appeals has "repeatedly recognized this duty," and it has "remanded for further development of the record not only where evidence of functional limitations is lacking, but also where the record" contains conflicting evidence "as to which the Commissioner fails to explain a choice." Id.

In the present case, the ALJ acknowledged that Plaintiff's medical records contained a diagnosis for "hydronephrosis, with secondary chronic kidney disease, for which [Plaintiff] underwent procedures to implant, and then remove, ureteral stents in October and November

8

2019 and then again in May and June 2020." (Tr. 16). In determining the severity of this impairment, the ALJ determined that the hydronephrosis had "at times had a significant effect on" Plaintiff's "ability to work." (Tr. 16). The ALJ ultimately concluded, however, that Plaintiff's "hydronephrosis and chronic kidney disease" were non-severe because "the evidence of the record fail[ed] to establish that the effect persisted, or was expected to persist, at a significant level for at least 12 consecutive months." (Tr. 16) (citing Tr. 325, 491).

Although the ALJ provided her conclusion that Plaintiff's "hydronephrosis and chronic kidney disease" were non-severe because "the evidence of the record fail[ed] to establish that the effect persisted, or was expected to persist, at a significant level for at least 12 consecutive months," the ALJ failed to explain how she reached this conclusion. Under the circumstances of the present case, the ALJ's failure to articulate reasons to support her conclusion regarding the duration of Plaintiff's hydronephrosis and chronic kidney disease constitutes error warranting remand because the record as a whole contains medical evidence both in support of and in opposition to her conclusion.

The ALJ's generic reference to two pages in the medical records absent any discussion explaining how those two pages support her conclusion is insufficient to satisfy the ALJ's duty to develop the record sufficiently enough to permit meaningful review on appeal. See, e.g., Dianna L.B. v. Saul, 19-cv-2561 (TNL), 2020 WL 4586822, at *5 (D. Minn. Aug. 10, 2020); Holdeman v. Kijakazi, No. 20-cv-729 (NKL), 2021 WL 6062368, at *6 (W.D.Mo. Dec. 22, 2021). This is especially true in the present case because the two pages referenced by the ALJ in support of her conclusion regarding Plaintiff's impairment persisting less than twelve months are from medical appointments separated by only one month without any specific mention or discussion regarding the duration of Plaintiff's impairments in those records. (See Tr. 325, 491).

9

The ALJ's conclusory reference of two pages in the record is also insufficient to satisfy the ALJ's duty to develop the record because upon the Court's review, the record contains medical evidence which is "both consistent and inconsistent with" the ALJ's conclusion. See Dianna L.B. v. Saul, 19-cv-2561 (TNL), 2020 WL 4586822, at *5 (D. Minn. Aug. 10, 2020). This is not to say an ALJ's conclusion is proper only when supported by all the evidence in the record. Rather, it is the ALJ's obligation to resolve the conflict between the incongruous evidence in the record. However, the ALJ's mere reference of two pages in the medical record without any corresponding discussion does not allow this Court to conduct a meaningful review of the ALJ's decision resolving the conflicting medical evidence in the record.

The ALJ's failure to articulate any explanation for her conclusion here is especially troublesome because although there is some medical evidence which ostensibly supports her conclusion, the record also contains a significant amount of evidence which, at least arguably, demonstrates that Plaintiff's hydronephrosis and chronic kidney disease persisted, or were expected to persist, at a significant level for at least twelve consecutive months. A review of the medical records finds that Plaintiff's symptoms related to his hydronephrosis and chronic kidney disease persisted from at least March 11, 2019, until July 24, 2020, or January 27, 2021. For example, prior to March 11, 2019, Plaintiff underwent several procedures related to his kidneys, including stone removal, double stent placement, and holmium laser lithotripsy. (Tr. 378). On August 20, 2019, Plaintiff presented with right flank pain associated with "large right hydroureteronephrosis," which resulted in Plaintiff being scheduled for surgical care which occurred on September 11, 2019. (Tr. 367–369, 378). On October 27, 2019, Plaintiff presented to the emergency department with acute pain in his right flank, and he was diagnosed with hydronephrosis of the right kidney due to ureteral stricture. (Tr. 1056–1060).

Plaintiff's symptoms related to his hydronephrosis and chronic kidney disease continued into 2020. From October 27, 2019, through May 10, 2020, Plaintiff underwent several surgeries and procedures to treat his impairment, including balloon dilation, ureteroscopy, and stent placement, with only minimal benefit. (See Tr. 1419). On January 3, 2020, imaging showed "a small amount of calcification near the distal right ureter," and "blood flow" imagining showed "diminished flow and cortical activity within the right kidney." (Tr. 1068, 1071). On March 30, 2020, Plaintiff discussed continuing treatment options with his physician, and his physician noted that getting Plaintiff to undergo the treatment procedure was "semi-urgent" because he had an "obstruction to his right kidney." (Tr. 1404). On May 11, 2020, Plaintiff underwent another surgery in which stents were placed in his ureter and bladder; the physician expected to leave the stents in place for five to six weeks. (Tr. 1420). Plaintiff reported "doing well" with the stents in place. (Tr. 1431). The stents were removed on June 23, 2020, and Plaintiff was instructed to follow up in one month. (Tr. 1431–1432). Imaging on July 24, 2020, showed "[r]esidual prominence of the right renal collecting system and right ureter most compatible with sequelae of a chronic dilated state/boggy collecting system" resulting in the physician concluding that Plaintiff continued to have "reduced right renal parenchymal function." (Tr. 1440).

Ultrasonographic imaging on January 27, 2021, showed no sonographic evidence of hydronephrosis, but there was a cyst on each of Plaintiff's kidneys. (Tr. 1441, 1530). Plaintiff also continued to report pressure in his right kidney when lying down and pressure over his bladder when standing. (Tr. 1444).[4]

Importantly, the Court does not highlight the above evidence to demonstrate that the record as a whole contains substantial evidence to support only the conclusion that Plaintiff's

---

[4] Although there appear to be no further medical records related to Plaintiff's hydronephrosis and chronic kidney disease, this is ostensibly because the medical records do not continue much further in time beyond this date. (See Tr. 322–1533).

11

hydronephrosis and chronic kidney disease impairments persisted for more than twelve consecutive months. Rather, the Court highlights the above evidence to demonstrate that the record contains medical evidence to support the conclusion that Plaintiff's hydronephrosis and chronic kidney disease impairments did not persist more than twelve consecutive months and medical evidence to support the opposite conclusion. It was the ALJ's obligation to resolve the differences between the conflicting evidence and to articulate her reasoning in support of her decision in a manner that permits meaningful review.

It is evident from her decision that the ALJ resolved the difference between this conflicting evidence by concluding that Plaintiff's hydronephrosis and chronic kidney disease impairments did not persist more than twelve consecutive months. The ALJ failed, however, to provide any explanation in support of her conclusion. The ALJ's failure here warrants remand. Noerper v. Saul, 964 F.3d 738, 747 (8th Cir. 2020).

Defendant argues that remand is not appropriate here because substantial evidence in the record supports the ALJ's conclusion that Plaintiff's hydronephrosis and chronic kidney disease impairments are non-severe impairments. In doing so, however, Defendant relies on rationales which were not proffered by the ALJ in her discussion of Plaintiff's hydronephrosis and chronic kidney disease. (See Def.'s Mem. [Docket No. 20] at 4–8). In proffering these rationales, Defendant also cites to evidence which the ALJ did not highlight in reaching her conclusion. (Id.). The Court is unpersuaded by Defendant's arguments here.[5]

Defendant may not demonstrate that the ALJ's decision is supported by substantial evidence by relying on rationales other than those proffered by the ALJ or relying on evidence

---

[5] The Court is also unpersuaded by Defendant's argument that remand is not necessary because Plaintiff failed to highlight evidence demonstrating that his hydronephrosis and chronic kidney disease significantly limited his ability to perform basic work functions. The ALJ specifically noted that Plaintiff's "hydronephrosis has at times had a significant effect on the claimant's ability to work." (Tr. 16).

other than the evidence relied upon by the ALJ. This Court's review of the Commissioner's decision, through the ALJ, is limited to the grounds identified in the ALJ's decision. See, e.g., Gerald L. v. Kijakazi, No. 20-cv-1352 (KMM/TNL), 2022 WL 4472749, at *25 (D. Minn. July 26, 2022), report and recommendation adopted, 2022 WL 4465958 (D. Minn. Sept. 26, 2022); Securities & Exchange Comm'n v. Chenery Corp., 318 U.S. 80, 87 (1943); Banks v. Massanari, 258 F.3d 820, 824 (8th Cir. 2001); Healtheast Bethesda Lutheran Hosp. and Rehab. Ctr. v. Shalala, 164 F.3d 415, 418 (8th Cir. 1998). The Court's review "must consider the agency's rationale for its decision, and if that rationale is inadequate or improper the court must reverse and remand for the agency to consider whether to pursue a new rationale for its decision or perhaps to change its decision." Shanda v. Colvin, No. 14-cv-1838 (MJD/JSM), 2015 WL 4077511, at *29 (D. Minn. July 6, 2015); see e.g., Gerald L., 2022 WL 4472749, at *25. "[A] reviewing court cannot search the record to find other grounds to support the decision of the ALJ." Shanda, 2015 WL 4077511, at *29 (quoting Mayo v. Schiltgen, 921 F.2d 177, 179 (8th Cir. 1990)). Moreover, the ALJ's decision cannot be sustained on the basis of the post-hoc rationalizations of appellate counsel. See Stacey S. v. Saul, No. 18-cv-3358 (ADM/TNL), 2020 WL 2441430, at *15 (D. Minn. Jan. 30, 2020), report and recommendation adopted, 2020 WL 1271163 (D. Minn. Mar. 17, 2020). "It is not the role of this Court to speculate on the reasons that might have supported the ALJ's decision or supply a reasoned basis for that decision that the ALJ never gave." Stacey S., 2020 WL 2441430, at *15 (collecting cases); see Gerald L., 2022 WL 4472749, at *25.

Hypothetically, it may be true that in reaching her decision the ALJ resolved the conflicting evidence, as the Commissioner's counsel does here, to conclude that although Plaintiff's hydronephrosis and chronic kidney disease impairments persisted more than twelve

months in some form, these impairments did not persist more than twelve months at a significant enough level to warrant classification as severe impairments. But the ALJ did not offer any such rational in her decision, and the Court cannot assume any such rationale on appeal. Stacey S., 2020 WL 2441430, at *15.

In summary, the Court finds that in light of the evidence in the record indicating that Plaintiff's hydronephrosis and chronic kidney disease impairments persisted for greater than twelve consecutive months, the ALJ failing to articulate reasons in support of her conclusion that Plaintiff's hydronephrosis and chronic kidney disease impairments would not persist for at least twelve consecutive months constitutes a failure of her duty to develop the record sufficiently to permit meaningful review on appeal.[6] The ALJ's failure here warrants remand.

## B. RFC Accounting for All Impairments

As observed above, Plaintiff also argues that the ALJ erred in her RFC determination by failing to account for all of Plaintiff's impairments. Specifically, Plaintiff argues that the ALJ failed to account for his physical impairments. The Court will only briefly discuss this issue because upon remand the Social Security Administration's reevaluation of the severity of Plaintiff's hydronephrosis and chronic kidney disease impairments will necessarily alter the corresponding RFC discussion. Nevertheless, some discussion is warranted for the reasons highlighted below.

---

[6] To be sure, Plaintiff bears the burden of proving the severity of his impairments at step two of the sequential analysis. But "the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case." Snead v. Barnhart, 360 F.3d 834, 838 (8th Cir. 2004). As part of this responsibility, the ALJ must adequately explain her decisions and factual findings in order to permit the Court to determine whether substantial evidence supports the decisions. See Scott ex rel. Scott v. Astrue, 592 F.3d 818, 822 (8th Cir. 2008) (citing Chunn v. Barnhart, 397 F.3d 667, 672 (8th Cir. 2005)); Pettit v. Apfel, 218 F.3d 901, 903–04 (8th Cir. 2000). In those cases where the ALJ's factual findings and overall conclusions are insufficient to permit meaningful appellate review, remand is appropriate. See Pettit v. Apfel, 218 F.3d 901, 903–04 (8th Cir. 2000). Such is the case now before the Court.

"[A] claimant's RFC is a medical question," and therefore, "an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." Combs v. Berryhill, 878 F.3d 642, 646 (8th Cir. 2017) (quoting Steed v. Astrue, 524 F.3d 872, 875 (8th Cir. 2008)). "The RFC is a function-by-function assessment of an individual's ability to do work-related activities based upon all of the relevant evidence." Casey v. Astrue, 503 F.3d 687, 696 (8th Cir. 2007). The ALJ's RFC determination must be based on all the relevant evidence and account for all of a plaintiff's impairments, regardless of whether those impairments are severe or non-severe. 20 C.F.R. § 404.1545(a)(2); Fredrickson v. Barnhart, 359 F.3d 972, 976 (8th Cir. 2004); Rousey v. Comm'r of Soc. Sec., 285 F. Supp. 3d 723, 740–41 (S.D.N.Y. 2018); Reilly v. Saul, 498 F. Supp. 3d 688, 696 (E.D.Pa. 2020).

In the present case, the ALJ's RFC determination did not contain any limitations related to physical impairments other than precluding more than "occasional exposure to work around hazards, such as unprotected heights and fast and dangerous moving machinery." (Tr. 19–20). In her discussion regarding Plaintiff's RFC, the ALJ's only reference to Plaintiff's physical impairments was to note that the opinions of the State agency medical consultants were "inconsistent with the absence of objective evidence of a significant persistent effect on the claimant's ability to work arising from his physical impairments lasting at least 12 consecutive months." (Tr. 22–23).

The Court has, however, already determined that in reaching her conclusion regarding the duration of Plaintiff's physical impairments, the ALJ failed in her duty to develop the record in a manner which permits meaningful review. In her RFC discussion, the ALJ does not offer any additional or supplemental explanation in support of her decision that Plaintiff's physical impairments would not persist at least twelve months. Thus, the ALJ's decision not to include

15

any physical limitation in Plaintiff's RFC without articulating any explanation in support of that decision represents another failure to develop the record in a manner which permits meaningful appellate review. This constitutes another basis for remand.

### C. Mr. Bauer's Medical Opinions

Plaintiff also argues that the ALJ erred in her consideration of Grant Bauer's three medical opinions. Specifically, Plaintiff argues that the ALJ incorrectly concluded that Mr. Bauer's treatment notes do not support his opinions. Plaintiff further argues that the ALJ failed to discuss the required factors in evaluating Mr. Bauer's opinions. The Court will only briefly discuss this issue because here again upon remand the Social Security Administration's reevaluation of the severity of Plaintiff's impairments could alter the consideration of whether the medical opinions in the record, including Mr. Bauer's opinions, are consistent with the medical evidence of record.

Mr. Bauer is a Board Certified Licensed Independent Clinical Social Worker who has been treating Plaintiff since December 2015. (Tr. 747). Mr. Bauer offered three opinions relative to Plaintiff's impairments: an April 14, 2020, Treating Source Statement form; an October 14, 2020, Treating Source Statement form; and a January 22, 2021, letter. (Tr. 746–751, 971–975, 1373).

The relevant regulations governing the weighing of opinion evidence were revised for claims filed on or after March 27, 2017. See 20 C.F.R. § 404.1520c(a). Because Plaintiff filed his application for disability benefits on December 27, 2019, the new regulations apply here. See Id.

The new regulations eliminate the long-standing "treating physician" rule. Id.; see Kuikka v. Berryhill, No. 17-cv-374 (HB), 2018 WL 1342482, at *9 n.3 (D. Minn. Oct. 17, 2019). Under the new regulations, an ALJ does "not defer or give any specific evidentiary weight,

including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Rather, the ALJ evaluates the persuasiveness of any medical opinion by considering the following five factors: (1) supportability;[7] (2) consistency;[8] (3) relationship with the claimant; (4) specialization; and (5) other factors. 20 C.F.R. § 404.1520c(c).

The two most important factors are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). The ALJ must explain how these two factors were considered. Id. The ALJ may also, but is not required to, explain how the remaining factors were considered. Id. However, where the ALJ "find[s] that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ "will articulate how [she] considered the other" enumerated factors "for those medical opinions or prior administrative medical findings[.]" 20 C.F.R. § 404.1520c(b)(3).

In the present case, the ALJ discussed each of Mr. Bauer's opinions separately. (Tr. 23–24). The ALJ found the portion of Mr. Bauer's April 14, 2020, opinion related to Plaintiff's "vocational reliability" to be unpersuasive. The ALJ, however, found the portion of Mr. Bauer's April 14, 2020, opinion concerning Plaintiff's cognitive limitations to be persuasive. (Tr. 23). As for Mr. Bauer's October 14, 2020, opinion and his January 22, 2021, opinion, the ALJ found both opinions to be unpersuasive. (Tr. 23–24).

---

[7] "Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 1520c(c)(1).

[8] "Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 1520c(c)(2).

Because the ALJ did not find any of Mr. Bauer's opinions to be equally well-supported as any other opinion about the same issue, the ALJ is required here to explain only how the supportability and consistency factors were considered. 20 C.F.R. § 404.1520c(b). On the record now before the Court, the ALJ failed to do so.

In her discussion of Mr. Bauer's three opinions, the ALJ addressed only the supportability factor. (Tr. 23–24). In other words, the ALJ's discussion of Mr. Bauer's opinions addressed only whether the opinions were supported by Mr. Bauer's own treatment notes and the objective medical evidence presented by Mr. Bauer himself. (Tr. 23–24). The ALJ failed to proffer any discussion of the consistency factor, to wit: whether Mr. Bauer's opinions were consistent with the evidence from other medical sources and nonmedical sources. The ALJ's failure to discuss the consistency factor regarding Mr. Bauer's opinions represents a sufficient, independent legal error warranting remand of the present action. See, e.g., Bonnett v. Kijakazi, 859 F. App'x 19, 20 (8th Cir. 2021) (finding remand required because "while the ALJ adequately evaluated the supportability of [the plaintiff's physician's] opinion, she did not address whether his opinion was consistent with the other evidence of record, as required by the applicable regulation"); Lucus v. Saul, 960 F.3d 1066, 1069–70 (8th Cir. 2020) (finding remand required where the ALJ discredited a physician's opinion without discussing factors contemplated in the regulation; stating, "The failure to comply with SSA regulations is more than a drafting issue, it is legal error.").[9]

---

[9] The ALJ here also appeared to discount Mr. Bauer's opinions because Mr. Bauer is "not an acceptable medical source." (Tr. 23). However, for claims filed after March 27, 2017, such as Plaintiff's present claim, "all medical sources, not just acceptable medical sources, can make evidence that [the Social Security Administration] categorize and consider as medical opinions." Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 FR 15263-01; 20 C.F.R. § 404.1520c.

## V. Type of Remand

The decision remains for the undersigned to determine whether to remand the present case to the Social Security Administration for further consideration or for entry of an award of benefits. The Court finds that remand for further consideration is appropriate in the present case.

After determining that the Commissioner's decision is not supported by substantial evidence, a reviewing court can reverse and immediately award benefits "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." Faucher v. Sec'y of Health & Human Servs., 17 F.3d 171, 176 (6th Cir. 1994). "A judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." Id. Where there is conflicting evidence in the record, the Court should remand the case back to the Commissioner for further consideration. See Id.

While it is possible that Plaintiff will be entitled to benefits, on the present record, this Court cannot say that such a determination can be made as a matter of undisputed fact, and consequently, it declines to reverse for an immediate award of benefits. Although there is evidence suggesting that Plaintiff is entitled to an award of benefits, there is also evidence to the contrary, and the evidence in support of Plaintiff being awarded benefits cannot be said to be so overwhelming as to permit the Court to make an award of benefits at this time. Instead, the Court will remand this case to the Commissioner so that a determination may be made in a manner consistent with this Order and on the medical evidence in the record.

## VI. Conclusion

Therefore, based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT:**

1. Plaintiff's Motion for Summary Judgment, [Docket No. 16], is **GRANTED**, as set forth herein;

2. Defendant's Motion for Summary Judgment, [Docket No. 19], is **DENIED**; and

3. The above captioned matter is **REMANDED** to the Social Security Administration, pursuant to sentence four of 42 U.S.C. § 405(g), for further administrative proceedings consistent with the Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  September   28   , 2023             *s/ Tony N. Leung*
                                             Hon. Tony N. Leung
                                             United States Magistrate Judge